**In the Matter of the ESTATE OF Clarisse DEAN, William Brandecker, as personal representative of the Estate of Clarisse Dean, Respondent,**

v.

**Karen Robey MORRIS, Defendant,**

**Douglas Bevans, Appellant.**

**No. WD 53616.**

Missouri Court of Appeals, Western District.

March 3, 1998.

Richard Koehler, Butler, for Appellant.

Steven White, Independence, for Respondent.

HANNA, Judge.

Mr. William Brandecker was the attorney for Mrs. Clarisse Dean. He prepared Mrs. Dean's Last Will and Testament and later drew up a Revocable Trust Agreement for her. Mrs. Dean is now deceased and Mr. Brandecker is acting as the personal representative of her estate. In his capacity as the personal representative, Mr. Brandecker filed in the probate division of the circuit court a multi-count petition which, among other matters, requested that the court rule on the validity of a document that Mrs. Dean had drawn which purportedly revoked her trust agreement. The defendants, who are four great-nieces and nephews of Mrs. Dean, filed a counterclaim against Mr. Brandecker alleging that they will be damaged by the lawsuit he filed because they will receive less under Mrs. Dean's last will than under her trust agreement.[1] The court sustained Brandecker's motion to dismiss defendants' counterclaim. This appeal followed. We affirm.

In his capacity as the personal representative of Mrs. Dean's estate, Brandecker initiated a lawsuit which included a discovery of assets action to determine whether certain assets of Mrs. Dean should be included in the probate estate. Brandecker filed the action because there was substantial evidence that the trustee, Ms. Karen Robey Morris, had misappropriated Mrs. Dean's assets. The

---

1. After a hearing, the probate division held that the document revoking her trust was valid which left Mrs. Dean's will as the dispositive instrument. See Brandecker v. Morris, et al., WD

petition also requests a declaratory judgment as to a document signed by Mrs. Dean that purports to revoke the trust agreement. This document is at the center of the controversy. In addition, the petition asks the court to impose a constructive trust on assets that were allegedly misappropriated by Ms. Morris, who was the trustee, as well as requests an accounting.

The defendants filed a counterclaim in which they claim that Brandecker committed legal malpractice, constructive fraud, and tortiously interfered with a prospective advantage of the defendants. Their damages result from the trust agreement being declared invalid since their share of the inheritance will be a one-eleventh share under the residuary clause of the last will, instead of a one-seventh share under the trust. The trial court dismissed the defendants' counterclaim for failure to state a claim.

■ "When reviewing the dismissal of a petition, the pleading is granted its broadest intendment, all facts alleged are treated as true, and it is construed favorably to the plaintiff to determine whether the averments invoke substantive principles of law which entitle the plaintiff to relief." *Farm Bureau Town & Country Ins. Co. v. Angoff*, 909 S.W.2d 348, 351 (Mo. banc 1995); *Welch v. McReynolds*, 928 S.W.2d 433, 435 (Mo.App. 1996). If the motion to dismiss can be sustained on any meritorious grounds, the ruling of the trial court will be affirmed. *Farm Bureau Ins.*, 909 S.W.2d at 351.

The defendants first argue that the trial court erred in dismissing their counterclaim in that they pleaded a cause of action of legal malpractice against Brandecker under the holding of *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624, 628 (Mo. banc 1995). The defendants allege that Brandecker had knowledge of Mrs. Dean's intent, as expressed in her trust, for them to receive a

one-seventh interest in the residuary portion of her estate.

■ Legal malpractice is defined as "any misconduct or unreasonable lack of skill or fidelity in professional and fiduciary duties by an attorney." *Rodgers v. Czamanske*, 862 S.W.2d 453, 458 (Mo.App.1993). In order to maintain a cause of action for legal malpractice a plaintiff must prove: (1) an attorney-client relationship; (2) negligence or breach of contract; (3) proximate causation of plaintiff's damages; and (4) damages to the plaintiff. *See Klemme v. Best*, 941 S.W.2d 493, 495 (Mo. banc 1997)(citing *Donahue*, 900 S.W.2d at 626). "A legal malpractice action thus is founded on the attorney's duty to exercise due care or to honor express contract commitments. An attorney has a basic fiduciary obligations of undivided loyalty and confidentiality." *Klemme*, 941 S.W.2d at 495.

■ Thus, the counterclaim must plead ultimate facts that "an attorney-client relationship existed in which [Brandecker] performed services specifically intended by [Mrs. Dean] to benefit the [defendants]." *Id.* The inquiry is whether the intent of the client to benefit the non-client was the direct purpose of the attorney-client relationship. *Id.* at 628. It does not extend to those incidentally deriving a benefit. *Id.*

■ The Supreme Court in *Donahue* fashioned a six-part test balancing test for determining whether an attorney owes a duty to a non-client.[2] *Donahue* held that the six factors weigh in favor of finding that an attorney who advised and prepared testamentary documents for a client owed a legal duty to the intended beneficiaries of the testamentary transfers. *Donahue*, 900 S.W.2d at 629.

The defendants assert an attorney-client relationship under *Donahue* because Brandecker performed services specifically intended by Mrs. Dean to benefit them. The

53953, —— S.W.2d ——, 1998 WL 113131 (Mo. App.1998).

**2.** The six factors are:
(1) the existence of a specific intent by the client that the purpose of the attorney's services were to benefit the plaintiffs,
(2) the foreseeability of the harm to the plaintiffs as a result of the attorney's negligence,

(3) the degree of certainty that the plaintiffs will suffer injury from the attorneys misconduct,
(4) the closeness of the connection between the attorney's conduct and the injury,
(5) the policy of preventing future harm, and
(6) the burden on the profession of recognizing liability under the circumstances.
Donahue, 900 S.W.2d at 629.

first element in determining an attorney-client relationship requires that Brandecker performed services in which Mrs. Dean specifically intended to benefit the defendants. *Id.* at 629. When the revocable trust agreement was prepared, the defendants were named as beneficiaries of a one-seventh share of the residuary estate. The defendants pleaded an expectancy to the funds under the trust agreement.

■ *Donahue* also requires allegations of negligence or breach or contract, causation and damages. The defendants have failed to plead facts that show the elements of negligence and causation. *See Klemme,* 941 S.W.2d at 495. The wrongdoing identified by the defendants on appeal was that Brandecker executed two "conflicting" estate planning documents with knowledge of the disparity in the distribution under the two documents. The defendants do not suggest that the preparation of these two documents was other than at the direction of Mrs. Dean, or in accordance with her wishes. There is no contention in the defendants' argument here that Brandecker was negligent, either in the execution of the documents or in failing to carry out Mrs. Dean's directions. We cannot declare, based on the facts asserted, that the preparation of two estate planning documents supports a claim of negligence.

■ Second, the defendants fail to allege facts supporting causation. The original trust agreement permitted Mrs. Dean the freedom to revoke it, which she did on January 26, 1993. The counterclaim acknowledges that there was a document that purported to revoke the trust agreement. However, there is no allegation that Brandecker prepared this document.[3] The defendants' argument ignores Mrs. Dean's intent, as evidenced by her execution of a document specifically revoking the trust agreement. It confirms Mrs. Dean's specific intent not to benefit the defendants to the extent of a one-seventh share. It was not Brandecker's actions which caused the defendants to receive less than a one-seventh share, but rather Mrs. Dean's free exercise

of her right to change her estate plan. The facts alleged do not establish that Brandecker's conduct was the proximate cause of the defendants' damages.

■ Furthermore, the defendants allege that initiation of the discovery of assets suit, as well as the declaratory judgment action concerning the trust revocation, was a breach of Brandecker's fiduciary duty as to these defendants. Under Missouri law, a personal representative who believes an asset may be part of an estate may file a verified petition in the probate division where the estate is pending, to seek a determination of the title or right of possession of the asset. *See* § 473.340.1, RSMo 1994. The petition must describe the asset and the interest of the petitioner in the asset which is being withheld. *See id.* The purpose of a discovery of assets lawsuit is to obtain all of the assets that should be included in the probate estate. *See In re Estate of Pilla,* 735 S.W.2d 103, 104 (Mo.App.1987).

■ The personal representative is under a duty "to look after the interests of the estate and to act on behalf of *all* persons who have an interest in the estate." *Estate of Veselich v. Northwestern Nat'l Cas. Co.,* 760 S.W.2d 564, 569 (Mo.App.1988)(emphasis added). *See also In the Matter of Stroh,* 899 S.W.2d 534, 538 (Mo.App.1995); *Mathews v. Pratt,* 367 S.W.2d 632, 636 (Mo.1963). "A personal representative is liable for want of due care and skill with the measure for due care and skill being that which a prudent person would exercise in the direction and management of their affairs." *Estate of Veselich,* 760 S.W.2d at 569.

■ In his capacity as personal representative, Brandecker is under a duty to seek a declaration concerning the validity of the trust if there are assets which he believes should be included in the probate estate. In this case, there were two compelling reasons for filing the action. First, there was a document which, if valid, would place all of the trust assets into the probate estate. Also, there was reasonable cause to believe

---

3. The facts set forth in Brandecker v. Morris, et al., WD 53953, — S.W.2d —, 1998 WL 113131 (Mo.App.1998) are that the revocation document was prepared by another attorney who was not associated with Brandecker.

that Ms. Morris misappropriated trust assets for her own use, which, if the trust estate was voided, should be included in the probate estate.

The defendants' allegation that Brandecker sought to defeat the trust which, in turn, injured them, is without merit. As the personal representative, Brandecker is under a fiduciary duty to *all* the beneficiaries under the will, not just the defendants, to ascertain the assets that should be properly included in the probate estate. *See Estate of Veselich*, 760 S.W.2d at 569. Therefore, he appropriately initiated the foregoing action to determine the extent of the property in the estate. Point one is denied.

The defendants' second "point relied on" continues for two-and-a-half pages, in which they explain that the relevant count was mislabeled "intrinsic fraud" but was meant to be a claim for breach of a fiduciary duty. The duty apparently was breached by initiating this action with the knowledge that the defendants would receive only the same amount of inheritance as their cousins under Mrs. Dean's will. Furthermore, the defendants claim that Brandecker breached his duty by filing the suit without notice or warning to them, and by failing to notify them of the conflict of interest. The point continues that Brandecker placed the interests of their cousins above those of the defendants.

Supreme Court Rule 84.04 sets forth the requirements for filing briefs with this court. Rule 84.04(d) has the three components regarding points relied on. The point relied on must include: (1) a concise statement of the challenged ruling of the trial court, (2) the rule of law which the court should have applied, and (3) the evidentiary basis upon which the asserted rule is applicable. *See Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978).

 The purpose of requiring compliance with Rule 84.04(d) is to facilitate "full advocacy and affords opportunity for clarification by meaningful questions directed to issues stated in the points relied on." *Id.* at 686. An

appellate court should not be required to sift through the argument portion of the brief to ascertain the nature of the allegations asserted. *See id.* This is not only a waste of judicial time, but the court may interpret the contention differently than was intended by the party asserting the contention. *See id.* "If that happens, the appellate court has failed in its primary objective of resolving issues raised and relied upon in appeal." *Id.*

 The defendants' second point does not comply with Rule 84.04(d) on several grounds. A two and one-half page point relied on does not qualify as a concise statement of the challenged ruling of the trial court.[4] Additionally, the allegation that Brandecker had a duty to notify the defendants, before filing the discovery of assets claim, of his "conflict of interest" is not supported by any legal authority. Assuming a conflict of interest, which we have not found, there is no legal authority cited which supports this cause of action. The argument portion does not explain or support how a duty was created on the part of the personal representative, as alleged, in his personal capacity in favor of some of the beneficiaries. The defendants do not suggest that this is a case of first impression, which would explain the absence of any authority. Therefore, we decline review because "where a party fails to support a contention with relevant authority or argument beyond conclusions, the point is considered abandoned." *Beatty v. State Tax Commission*, 912 S.W.2d 492, 498–99 (Mo. banc 1995).

 In their final point, the defendants argue that their counterclaim stated a claim for tortious interference. A claim for tortious interference with a contract or business expectancy has five requisite elements:

(1) A contract or a valid business relationship or expectancy (not necessarily a contract);

(2) Defendant's knowledge of the contract or relationship;

(3) Intentional interference by the defendant inducing or causing a breach of the contract or relationship;

4. Furthermore, the point relied on contains arguments which should have been reserved for the argument portion of the brief.

(4) The absence of justification;

(5) Damages resulting from the defendant's conduct.

*Boyer v. Independence Manor Care Ctr., Inc.,* 721 S.W.2d 246, 248 (Mo.App.1986).

 The defendants charge, *inter alia,* that Brandecker interfered with their inheritance when he initiated the declaratory judgment action, which was designed to defeat their expectancy under Mrs. Dean's trust agreement. The defendants maintain that because Brandecker drafted the trust agreement, as well as Mrs. Dean's will, he knew of their expectancy under both documents. His action in filing the foregoing claims interfered with their expectancy of a one-seventh share under the trust agreement.

Missouri recognizes a cause of action for the tortious interference with a gift or inheritance. *See Hammons v. Eisert,* 745 S.W.2d 253, 258 (Mo.App.1988). The defendants cite this case for the proposition that Brandecker tortiously interfered with their expectancy. In *Hammons,* a co-trustee for one of the trusts was sued for tortious interference with an expectancy. The beneficiaries of the trusts claimed that he used undue influence over the settlor to divert funds from the trusts for his own use, as well as the settlor's use. *See id.* at 254–55. The beneficiaries of the trusts' claim was premised on undue influence, and they alleged the necessary facts which would support a claim of undue influence in the procurement of the revocation. *See id.* The *Hammons* court found that a beneficiary of a revocable trust has a cause of action against a person who, through undue influence, causes the settlor to revoke the trust and divert funds which would have otherwise been received by the beneficiary. *See id.* at 258.

In the case before us, the defendants have not alleged undue influence by Brandecker in procuring the revocation of the trust agreement. The allegations are that Brandecker drafted the trust agreement and the will. However, there is no allegation that he drafted the document revoking the trust or that he participated in procuring the document. He simply filed an action with the probate court requesting that the court rule on its validity of the document revoking the trust.

Moreover, the defendants have not met the third and fourth elements required to maintain a cause of action for tortious interference with an expectancy: (3) the intentional interference by the defendant inducing the breach of the relationship; and (4) the absence of justification for the breach. The defendants have neither alleged any facts of intentional interference by Brandecker, which induced or caused Mrs. Dean to revoke the trust agreement, nor have they alleged that there was an absence of justification for the revocation. As we have noted, the personal representative has a fiduciary duty to discover all of the assets belonging to an estate. Thus, Brandecker's action was proper in requesting the court to rule on the validity of the trust to determine if the trust assets should be included in the estate. The defendants have not pleaded facts that support all of the elements required to maintain a claim for tortious interference. Point denied.

The court's dismissal of the defendant's counterclaim is affirmed.

LOWENSTEIN, P.J., and BRECKENRIDGE, J., concur.